**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:

HARLAN PAGE CONFER III and
CHARLOTTE CLUFF CONFER,

          Debtors.

Case No. 21-20167-A-13

BHS-1

**MEMORANDUM**

Argued and submitted on May 18, 2021

at Sacramento, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

Appearances:    Michael O'Dowd Hays for Harlan Page Confer III and Charlotte Cluff Confer; Barry H. Spitzer for Jacob Watson and James Watson; Kristen Koo for David P. Cusick, Chapter 13 trustee

Executory contracts may be rejected in Chapter 13.  One day before a foreclosure sale, octogenarian sellers contracted to sell their home for one-half its value.  Buyers have not yet paid the purchase price; sellers have not conveyed title and remain in possession.  Sellers filed Chapter 13 and confirmed a plan rejecting all executory contracts.  Buyers move for stay relief to prosecute a specific performance action for the sale contract.  Should the court grant the motion?

**I.   FACTS**

**A.   Harlan and Charlotte Confer, Their Home and Financial Trouble**

Harlan Confer is an 86-year old retired Baptist minister and army chaplain; Charlotte Confer (collectively "the Confers") is an 85-year old retired nurse.

In 1986, the Confers purchased a home at 295 San Joaquin Drive, Red Bluff, California.  It is a four bedroom, two bathroom, 1,773 square foot home built in 1959.  Prior to the events that form the basis of this dispute, the Confers' home had a value of $255,000-280,000 and was encumbered by a first deed of trust in favor of New Rez, LLC.

In 2010, the Confers received a home equity loan from Umpqua Bank to build a small outbuilding behind their residence.  The amount of that loan was $43,000; the loan was secured by a second deed of trust against their home.

Thereafter, Harlan Confer used the couple's social security and pension income to make unsecured loans to persons who were supposed to use the monies to fund their college education and then repay the Confers.  When the Confers' borrowers did not do so, the Confers fell

behind in payments on the loans secured by the first and second deeds of trust.  New Rez, LLC commenced foreclosure proceedings.[1]  The foreclosure sale was noticed for Monday, January 27, 2020, at 2:00 p.m.

**B.    The Residential Purchase Agreement**

During the evening before the foreclosure, Sunday, January 26, 2020, and mindful of the pending foreclosure sale, Edward Lenzer ("Lenzer") of "eXp Realty," contacted the Confers at their home and suggested a sale of the property to Jacob Watson and James Watson.  He promised the Confers $25,000 cash, approximately, in exchange for a deed to their home to the Watsons and the Watsons' agreement to pay two trust deeds encumbering the property and costs of sale. Initially, Harlan Confer was unwilling to sell, and asked Lenzer to arrange a loan to cure the arrearages or to assist in consolidating the two deeds of trust.  Lenzer informed the Confers that the sale was the only mechanism by which the equity in their home could be saved. Harlan Confer remembers that he agreed to the sale, if and only if he had a right to repurchase the property once he received the funds to do so; the Watsons, speaking through Lenzer, dispute that Harlan Confer conditioned the sale on such a repurchase provision.

The next morning, Lenzer returned to the Confers' home and presented them with a Residential Purchase Agreement signed by the Watsons.  Under its terms, Jacob Watson and James Watson offered to purchase 295 San Joaquin Drive, Red Bluff, California, from the Confers for $136,000.  The Watsons promised to pay the Confers $22,000

---

[1] The record is unclear whether it was New Rez, LLC or Umpqua Bank that prosecuted foreclosure proceedings.  For the purposes of this motion, the court assumes foreclosure was prosecuted by New Rez, LLC.  But the true identity of the foreclosing trust deed holder is not outcome-dispositive.

as a down payment and the balance, $114,000, at or before the close of escrow.  Edward Lenzer, eXp Realty, represented both the Confers and the Watsons in the transaction.  Possession of the property was to be turned over to the Watsons at the close of escrow.

Later that morning, the Confers signed the Residential Purchase Agreement.  Charlotte Confer delivered the signed sale agreement to Lenzer at the situs of the foreclosure sale moments before the trustee auctioned 295 San Joaquin Drive, Red Bluff, California.  Lenzer provided the auctioneer with proof that the arrearage had been paid (apparently by the Watsons), and the auctioneer cancelled the foreclosure sale.

Apparently, in their hurry to sign the agreement, the Confers failed to sign and/or initial all necessary portions of the Residential Purchase Agreement.  During the late afternoon or early evening hours of January 27, 2020, Lenzer returned to the Confers' home to collect still further signatures.  Lenzer rushed the Confers to do so, stating that "he wanted to get home and not spend another night in a motel."  Harlan Confer decl. p. 5, lines 1-2, May 4, 2021, ECF No. 40.

The Watsons did, in fact, make the $22,000 payment called for by the agreement.  Of that amount, the Watsons paid the Confers $19,968 directly, outside escrow; the remainder, approximately $2,032, was paid into escrow.  But the Watsons did not deposit the balance of the purchase price into escrow.

Later, the Confers declined to proceed with the sale.  Specifically, they refused to sign escrow instructions and they also refused to execute a deed to the property.  At all times pertinent hereto, the Confers have remained in possession of 295 San Joaquin

4

Drive, Red Bluff, California.

The Confers, who did not wish to sell their home, attempted to negotiate a settlement. But funding the settlement was a problem. The Watsons wanted the Confers to honor their agreement to sell. Settlement discussions broke down.

**C.    The State Court Action**

In June 2020, the Watsons filed an action in state court, seeking specific performance and damages. Steven M. Dean of the Dean Law Firm, Inc. was counsel for the Watsons.[2] The complaint plead causes of action for specific performance, breach of contract and fraud. It plead that (1) the Confers owned 295 San Joaquin Drive, Red Bluff, California; (2) the Confers entered into a Residential Purchase Agreement to sell that property to the Watsons for $136,000; (3) the Watsons made an earnest money down payment of $24,032 ($22,000 of which was paid directly to Confers); and (4) the Confers refused to perform the purchase agreement notwithstanding receipt of $22,000 from the Watsons. The Residential Purchase Agreement was appended to the complaint.

The Confers were served with the lawsuit but failed to make a timely appearance.

After the Confers' default was entered, in October 2020, the state court conducted a default prove up hearing. The court found that: (1) there was a "valid written contract"[3] between the Confers and

---

[2] The court takes judicial notice of the Complaint, *Watson v. Confer*, No. 20CI000087 (Tehama County Superior Court June 8, 2020), attached as Exhibit 1 to Adversary Complaint, *Watson v. Confer*, 21-2024 (Bankr. E.D. Cal. April 27, 2021), ECF No. 1.  Fed. R. Evid. 201.

[3] Facts not within the horizon of the Tehama County Superior Court make the court's use of the phrase "valid written contract" unfortunate and make the Watsons' dealings with the Confers more than a little troubling. First, the Residential Purchase Agreement appears to have been unsolicited. Lenzer

the Watsons for the sale of 295 San Joaquin Drive, Red Bluff, California, for $136,000; (2) the Watsons paid $22,000 ($19,967.88 directly to Confers) in earnest money; (3) the Confers refused to proceed with the sale; (4) the Confers remained in possession of the property; and (5) the Watsons had no adequate remedy at law. The court ordered the Confers to sign escrow instructions and to execute and deliver a grant deed for 295 San Joaquin Drive, Red Bluff to the escrow holder. It also ordered escrow to close "[two] business days

decl. 2:3-13, April 15, 2021, ECF No. 23. Second, it appears that the purchase was not for the Watsons' use as a personal residence, Lenzer decl. 2:7-15, May 7, 2011, ECF No. 44 (describing the subject property as "worth the investment by them"), Harlan Confer p. 4, May 4, 2021, ECF No. 40 ("He [Lenzer] informed me that they had a couple of investors that might be willing to agree but that he had to talk with them first"); *contra* Residential Purchase Agreement ¶ 9(A), April 15, 2021, ECF No.24 (suggesting use as a personal residence); see also Cal. Civ. Code § 1695.1(a)(1)(excluding purchases for use as the buyer's personal residence). Third, at the time of the transaction in dispute, Harlan Confer and Charlotte Confer were 86 and 85 years old, respectively. Charlotte Confer decl. p. 2, May 4, 2021, ECF No. 39. Fourth, the Watsons first approached the Confers 20 hours before the Confers' first deed of trust holder was to conduct a foreclosure sale of 295 San Joaquin Drive, Red Bluff, California, and the Watsons made their purchase offer 4 hours before the foreclosure sale. Lenzer decl. 2:4-6, May 7, 2021, ECF No. 44; Lenzer decl. 2-13, April 15, 2021, ECF No. 23; Charlotte Confer p. 3, May 4, ,2021, ECF No. 39. Fifth, the Watsons' purchase offer was for one-half the value of home. *Compare* Order for Specific Performance 2:9-16, April 15, 2021, ECF No. 24, *with* Schedule A/B, February 1, 2021, ECF No. 14 (purchase price of $136,000 against a value of $255,000). Sixth, eXp Realty (acting through Edward J. Lenzer) acted on behalf of both the Watsons and the Confers. Residential Purchase Agreement pp. 1, 10, April 15, 2021, ECF No. 24. Seventh, the Watsons and Lenzer appear to have violated the Home Equity Sales Contract Act, Cal. Civ. Code § 1695 et seq., by: (A) failing to give the Confers statutorily mandated notice of right to cancel the contract, Cal. Civ. Code § 1695.5, Residential Purchase Agreement ¶ 5(B) (omitting reference to Home Equity Sales Contract Act); (B) failing to include statutorily required information, Cal. Civ. Code § 1695.3; (C) paying consideration prior to expiration of time to rescind, Cal. Civ. Code §1695.6(b)(4); and (D) acting unconscionably, i.e., payment of one-half price to octogenarian sellers hours before foreclosure sale, Cal. Civ. Code §§ 1695.13-1695.14. This court believes that the buyers/Lenzer's actions give rise to causes of action against them for (1) Watsons: violation of Home Equity Sales Contract Act, Cal. Civ. Code § 1695.7 (actual and treble damages, as well as attorney's fees, Cal. Civ. Code § 1695.7); (2) Lenzer: breach of fiduciary duty, Restatement (Second) Agency § 387 et seq. (actual damages); and (3) Watsons and Lenzer: financial abuse of an elder person, Cal. Welfare & Inst. Code §§ 15610.30, 15657.5 (actual and punitive damages as well as attorney's fees).

after [the Confers] have deposited the [d]eed and escrow instructions with [the escrow holder] and [the Watsons] have deposited the cash balance of the purchase price." Order for Specific Performance 3:18-4:15, *Watson v. Confer*, No. 20CI000087 (Tehama County Superior Court October 7, 2020). The court reserved the issue of damages for later determination. *Id.* at 5:20-21.

The Confers did not sign the escrow instructions or convey title.

The monetary component of the state court action was not proved up and no judgment was entered.

### D.  Harlan Confer and Charlotte Confer file Chapter 13 Bankruptcy and Confirm a Plan

In January 2021, the Confers filed a Chapter 13 bankruptcy. As pertinent here, they claimed ownership in 295 San Joaquin Drive, Red Bluff, California, which they valued at $255,000. Their schedules indicate that their residence at 295 San Joaquin Drive, Red Bluff, California was encumbered by a first deed of trust in favor of New Rez, LLC and a second deed of trust in favor of Umpqua Bank. Both were in default. The Confers claimed a homestead exemption in their San Joaquin Drive residence in the amount of $300,000.[4] Schedule C, ECF No. 13. Their Schedule E/F, which lists "Creditors Who Have Unsecured Claims," included the following scheduled debt: "Dean Law Firm, Inc., 1610 West Street, Ste 2, P.O. Box 994134, Redding, CA 96099-4134"[5] in the amount of $32,174.42." *Id.* at Schedule E/F. In describing the debt, the Confers categorized the debt as "Other" and added the following verbiage "Attorneys for Jacob and James Watson in Case No.

---

[4] Cal. Code of Civ. Proc. 703.740.
[5] That address is consistent with Steven Dean/Dean Law Firm's address as indicated in the pleadings filed in *Watson v. Confer*, No. 20CI000087 (Tehama County Case No. 2020).

20CI000087 in Tehama County Superior Court, Red Bluff...” *Id.* Schedule G, which should list “Executory Contracts and Unexpired Leases,” was left blank. *Id.* at Schedule G. The creditors’ matrix filed in support of the petition included the “Dean Law Firm, Inc.,” at that firm’s correct address, but it did not include Jacob Watson or James Watson specifically.

The Confers also filed a Chapter 13 plan. Chapter 13 Plan, January 25, 2021, ECF No. 12. The plan provided for 60 monthly payments: $1,518 per month from February 2021 to September 25, 2023, and then $1,709 per month for the remainder of the plan. *Id.* at §§ 2.01, 2.03, 7.0. From those funds, the Chapter 13 trustee was to pay creditors by class. The plan provided for payment of administrative expenses, i.e., trustee and debtor’s counsel’s fees, as well as payment of ongoing and delinquent amounts due to the first and second trust deed holders, i.e., New Rez, LLC and Umpqua Bank. *Id.* at § 3.07. Unsecured creditors were provided for by the plan, but the Confers estimated that the dividend paid to that class would be “0%.” *Id.* at § 3.14. That plan rejected all executory contracts. *Id.* at §§ 4.01, 4.02. It also revested all property of the estate in the debtors upon confirmation. *Id.* at § 6.01.

The Clerk of the Court served the Notice of Chapter 13 Bankruptcy Case, February 9, 2021, ECF No. 15, and the Confers’ Chapter 13 Plan, January 25, 2021, ECF No. 15, on the creditors, including the Dean Law Firm, Inc., who was included on the Confers’ creditors’ matrix. Certificate of Notice, February 11, 2021, ECF Nos. 16-17. Because the Watsons were not included on the creditors’ matrix, they were not served with the Notice of Chapter 13 Bankruptcy Case, except through counsel. The Notice of the Chapter 13 Bankruptcy Case sets the

8

deadlines for objecting to the claims of exemptions, objection to plan confirmation and filing adversary proceedings to challenge the discharge of certain debts. Notice §§ 8, 9, February 9, 2021, ECF No. 15.

The trustee convened, and concluded, the meeting of creditors.

After the deadlines for objection to the debtors' claim of exemption and to confirmation of the plan passed—and neither the trustee nor any party in interest having objected, the Confers' Chapter 13 plan was confirmed.

Neither the Watsons, nor Lenzer, filed a Proof of Claim, and the non-governmental claims bar date has passed.

The Watsons subsequently filed an adversary proceeding to except the Confers' debt to them, contending that the debt incurred to them arose from fraud and/or constituted a willful and malicious injury. 11 U.S.C. § 523(a)(2)(A), (a)(6).[6] *Watson v. Confer*, No. 21-2024 (Bankr. E. D. Cal. 2021).

**II.  PROCEDURE**

The Watsons move for stay relief to enforce the order for specific performance issued by the state court. In support of their position, they argue that: (1) they were not given notice of the Confers' Chapter 13 petition; (2) the state court order of specific

---

[6] This court lacks subject matter jurisdiction over this adversary proceeding insofar as it raises the willful and malicious exception to discharge, 11 U.S.C. § 523(a)(6); *see Toste v. Smedberg (In re Toste)*, 2014 WL 3908139 (9th Cir. BAP August 12, 2014) (recognizing the discharge of 11 U.S.C. § 1328(a) does not except willful and malicious injuries from discharge and that only the hardship discharge of 11 U.S.C. § 1328(b)-(c) excepts those debts from the Chapter 13 discharge). Since the Confers have not yet sought--and may never seek--a hardship discharge, the court lacks subject matter jurisdiction over any § 523(a)(6) cause of action. Fed. R. Bankr. P. 4007(d). The court has issued an Order to Show Cause regarding dismissal. Order, Watson v. Confer, No. 21-2024 (Bankr. E.D. Cal. 2021), ECF No. 7.

performance extinguished the Confers' rights to the 295 San Joaquin Drive residence; (3) the state court's findings preclude this court from denying stay relief, i.e., the *Rooker-Feldman* doctrine; and (4) cause exists to allow the state court to complete the specific performance portion of their action.  The Confers oppose the motion.

**III.  JURISDICTION**

This court has jurisdiction, 28 U.S.C. §§ 1334, 157 (a), (b)(1); General Order No. 182 of the U.S. District Court for the Eastern District of California, and this is a core proceeding in which this court may enter final orders and judgment, 28 U.S.C. § 157(b)(2)(A), (G).

**IV.  LAW**

Filing a Chapter 13 petition invokes the stay.  11 U.S.C. §§ 103(a), 362(a).  "The stay protects the [1] debtor, [2] the debtor's property, and [3] property of the estate." *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 791 (Bankr. E.D. Cal. 2018), citing *In re Casgul of Nevada, Inc.*, 22 B.R. 65, 66 (9th Cir. BAP 1982).

> (a) Except as provided in subsection (b) of this section, *a petition* filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, *operates as a stay*, applicable to all entities, of--
>
> > (1) the commencement or continuation, including the issuance or employment of process, of *a judicial*, administrative, or other *action or proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> >
> > (2) the enforcement, *against the debtor* or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien
against property of the estate;

(5) *any act to create*, perfect, or enforce *against
property of the debtor* any lien to the extent that such
lien secures a claim that arose before the commencement
of the case under this title;

(6) *any act to collect*, assess, or recover a claim
*against the debtor* that arose before the commencement
of the case under this title....

11 U.S.C. § 362(a) (emphasis added).

Ordinarily, the stay terminates either upon discharge or when the
property is no longer property of the estate.

(c) Except as provided in subsections (d), (e), (f), and
(h) of this section--

(1) the stay of an act against property of the estate
under subsection (a) of this section continues until
such property is no longer property of the estate;

(2) the stay of any other act under subsection (a) of
this section continues until the earliest of--

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this
title concerning an individual or a case under
chapter 9, 11, 12, or 13 of this title, the time a
discharge is granted or denied....

11 U.S.C. § 362(c)(1), (c)(2).

While the stay remains effective, creditors may not take any of
the acts described in § 362(a). Acts in violation of the stay are
void, not voidable. *In re Gruntz*, 202 F.3d 1074, 1081-1082 (9th Cir.
2000); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d
581, 586 (9th Cir. 1993); *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.
1992) (acts in violation of the stay may not be cured or ratified).
Persons who violate the stay may be held to answer for actual and

punitive damages, as well as attorney's fees, 11 U.S.C. § 362(k), or

may be held in contempt of court. *In re Pace*, 67 F.3d 187, 193-194

(9th Cir. 1995).

Persons wishing to proceed against the debtor, the debtor's

property or property of the estate must seek, and obtain, leave of the

bankruptcy court. 11 U.S.C. § 362(d).

> (d) On request of a party in interest and after notice and
> a hearing, the court shall grant relief from the stay
> provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such
> stay--
>
>> (1) for cause, including the lack of adequate
>> protection of an interest in property of such party in
>> interest;
>>
>> (2) with respect to a stay of an act against property
>> under subsection (a) of this section, if--
>>
>>> (A) the debtor does not have an equity in such
>>> property; and
>>>
>>> (B) such property is not necessary to an effective
>>> reorganization....

11 U.S.C. § 362(d)(1), (d)(2).

Relief from the stay is sought by motion. Fed. R. Bankr. P.

4001(a)(1). When such a motion is presented, the parties share the

burden of proof.

> (g) In any hearing under subsection (d) or (e) of this
> section concerning relief from the stay of any act under
> subsection (a) of this section--
>
>> (1) the party requesting such relief has the burden of
>> proof on the issue of the debtor's equity in property;
>> and
>>
>> (2) the party opposing such relief has the burden of
>> proof on all other issues.

11 U.S.C. § 362(g).

"Cause" is not a defined term; what constitutes cause is

determined on a case-by-case basis. *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985). In some instances, cause includes allowing a creditor to conclude pre-bankruptcy state court litigation that fixes the parties rights. *In re Robbins*, 310 B.R. 626, 629-630 (9th Cir. BAP 2004) (perfection of prejudgment attachment lien); *cf. In re Perl*, 811 F.3d 1120, 1127 (9th Cir. 2016). In determining whether to allow litigation outside the bankruptcy court, most courts consider multiple factors. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2nd Cir. 1990).

**V.  DISCUSSION**

Long standing Ninth Circuit authority controls this dispute. In *In re Alexander*, a case that is [almost] indistinguishable from the present dispute, the circuit held that a real estate sales contract was executory and subject to rejection in a Chapter 13 plan, 11 U.S.C. § 1322(b)(7), even though the seller had deposited into escrow all funds necessary to close but where the buyer had neither "give[n] up possession" nor "convey[ed] title". 670 F.2d 885, 887-888 (9th Cir. 1982).

*Alexander* differs from the present case in that the buyers in the present case sought, and the state court issued, an order compelling the sellers, i.e., Harlan Confer and Charlotte Confer, to specifically perform their contract with the Watsons. In the Watsons' view, that order brings the case within the rule articulated in *Perl*, 811 F.3d at 1127 (which held that a writ of possession, after the conclusion of a foreclosure but prior to bankruptcy, extinguished all of the debtor's legal and equitable interests in the property). This court disagrees. *Perl* involves a post-foreclosure sale unlawful detainer proceeding in which a writ of possession was issued. But *Perl's* holding is based on

13

California Civil Code § 2924h(c), which specifically extinguishes the former owner's rights after nonjudicial foreclosure.  That section reads,

> For the purposes of this subdivision, the trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 18 calendar days after the sale, or the next business day following the 18th day if the county recorder in which the property is located is closed on the 18th day.

California Civil Code § 2924h(c).

In contrast, a decree of specific performance is an order only compelling a seller of real estate to complete the transaction, e.g., convey title, *Rogers v. Davis*, 28 Cal.App.4th 1215, 1221 (1994).  It does not extinguish the sellers' legal and/or equitable rights.  Moreover, the Tehama County Superior Court did not consider the seller's rights in its order.  Order for Specific Performance 4:20-5:3, Watson v. Confer, No. 20CI000087 (Tehama County Superior Court April 15, 2021), ECF No. 24 (authorizing the Watsons to use an expedited contempt mechanism to enforce the specific performance order).

### A.   The State Court's Specific Performance Order Did Not Extinguish the Confers' Rights in 295 San Joaquin Drive

When a Chapter 13 bankruptcy is filed an estate is created.  11 U.S.C. § 541(a).  That estate holds "all legal or equitable interests of the debtor in property as of the commencement of the case."  *Id.*  State, not federal, law "determine[s] property interests in bankruptcy proceedings."  *Perl*, 811 F.3d at 1127; *Butner v. United States*, 440 U.S. 48, 54-55 (1979). It is only when the debtor's legal and equitable interests have both been extinguished prior to the petition that a debtor, and by extension the estate, has no interest in

property. *Perl*, at 1127-1130 (properly noticed non-judicial foreclosure sale and timely recordation of deed extinguishes legal interest, Cal. Civ. Code § 2924h(c), writ of possession extinguishes equitable right of possession after foreclosure sale).

California courts have long understood that a buyer who obtains a specific performance decree becomes the equitable owner of the property, and the seller retains legal title until the buyer fully performs the contract. *Willis v. Wozencraft*, 22 Cal. 607, 616-617 (1863); *Miller v. Waddingham*, 91 Cal. 377, 380 (1891).

> However, a contract for the sale of real estate may be specifically enforced by the purchaser, *equity regarding as done that which ought to be done; it considers the purchaser to be the owner of the land. The vendor who retains the legal title as security for the payment of the purchase price* has no greater rights than he would possess if he had conveyed the land and taken back a mortgage. The vendee, particularly after he goes into possession of the land under an executory contract, is for all purposes the owner and the vendor retains mere legal title.

*Elliott v. McCombs*, 17 Cal.2d 23, 31 (1941) (internal citations omitted) (emphasis added).

Like *Elliott*, the state court issued a decree of specific performance. Order of Specific Performance, *Watson v. Confer*, No. 20CK000087 (Tehama County Superior Court October 7, 2020), ECF No. 24. It ordered the Confers to sign escrow instructions and a deed. *Id.* at 3:18-4:8. It also threatened the Confers with contempt for non-compliance. *Id.* at 4:20-5:3. But it went no further; such an order is not self-effectuating. Had the Watsons wished to enforce that order they would have needed to ask the court to appoint the Clerk of the Court as elisor to sign the escrow instructions and deed on the Confers' behalf. Cal. Code of Civ. Proc. § 128(a)(4); *Blueberry Properties, LLC v. Chow*, 230 Cal.App.4th 1017, 1020-1021 (2014); *Rayan v. Dykeman*, 224 Cal.App.3d 1629, 1635 fn. 2 (1990). The Watsons did

1   not do so.  Neither the escrow instructions, nor the deed, were signed

2   by the Confers or the Clerk of the Tehama County Superior Court and

3   there is no indication that the Watsons delivered the balance of the

4   purchase price into escrow.  For these reasons, the Confers retained

5   legal title to 295 San Joaquin Drive, Red Bluff on the date of the

6   petition.

7        **B.    The State Court's Order Does Not Bind this Court**

8        The Watsons argue that the *Rooker-Feldman* doctrine controls this

9   court's decision.  It does not.  The Watsons conflate the *Rooker-*

10  *Feldman* doctrine with the doctrine of res judicata (claim and issue

11  preclusion).  The *Rooker-Feldman* doctrine is a jurisdictional

12  limitation on this court; it "preclude[s] "de facto appeals" from

13  state court judgments—i.e., when a federal plaintiff asserts as a

14  legal wrong an allegedly erroneous decision by a state court and seeks

15  relief from a state court judgment based on that decision."  Virginia

16  A. Phillips and Karen L. Stevenson, *California Practice Guide: Federal*

17  *Civil Procedure Before Trial*, Subject Matter Jurisdiction § 2:4945

18  (Rutter Group 2021); 28 U.S.C. § 1257.  It "applies only when the

19  federal plaintiff was a party to the state case and is challenging an

20  adverse decision by the state court."  *Id.* at § 2:4950.  That is not

21  the case here.

22       In contrast, "[f]ederal courts must give the same res judicata

23  effect to state court judgments that courts of that state would give

24  (28 U.S.C. § 1738—"full faith and credit")."  *Id.*  Here, the debtors

25  are not asking this court to review, reverse or modify the state

26  court's order of specific performance; rather, they are resisting the

27  Watsons' motion for stay relief and are doing so under well-settled

28  circuit precedent.  *Alexander*, 670 F.2d at 887-888.

16

### 1.　Res Judicata - Issue preclusion

In federal courts, issue preclusion is determined by law of the state in which the underlying judgment was rendered. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995). "The party seeking to employ issue preclusion bears the burden of showing its applicability." *In re Javahery*, No. 2:14-BK-33249-DS, 2017 WL 971780, at *5 (B.A.P. 9th Cir. Mar. 14, 2017), *aff'd*, 742 F. App'x 307 (9th Cir. 2018), citing *Vella v. Hudgins*, 20 Cal. 3d 251, 257 (1977). California courts may apply issue preclusion when the following five elements are satisfied.

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, *the decision in the former proceeding must be final* and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001) (emphasis added).

California recognizes issue preclusion for default judgments but limits its application.

> The mere fact that "judgment was secured by default does not warrant the application of a special rule." *Williams v. Williams (In re Williams' Estate),* 36 Cal.2d 289, 223 P.2d 248, 252 (1950). *California law does, however, place two limitations on this general principle. The first is that collateral estoppel applies only if the defendant "has been personally served with summons or has actual knowledge of the existence of the litigation." In re Harmon,* 250 F.3d at 1247 (quoting *Williams,* 223 P.2d at 254). Collateral estoppel, therefore, only applies to a default judgment to the extent that the defendant had actual notice of the proceedings and a "full and fair opportunity to litigate." *Id.* at 1247 n. 6.
>
> *The second limitation*, in the context of a default judgment, *is that a decision has a preclusive effect in later proceedings "only where the record shows an express finding upon the allegation"* for which preclusion is

> *sought. Williams,* 223 P.2d at 254. But, as we recognized in *In re Harmon,* "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." 250 F.3d at 1248. In such circumstances, an express finding is not required because "if an issue was necessarily decided in a prior proceeding, it was actually litigated." *Id.*

*In re Cantrell*, 329 F.3d 1119, 1123-24 (9th Cir. 2003) (emphasis added).

Two of the elements for application of issue preclusion are lacking here. First, the state court judgment was not final. A judgment is final for the purposes of issue preclusion "while an appeal remains pending or while the period for filing an appeal has not yet expired. *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803 (9th Cir. 2007l) (applying California law); *Franklin & Franklin v. 7 Eleven Owners for Fair Franchising*, 85 Cal.App.4th 1168, 1174 (2000); *see also* Cal. R. of Court 8.104(a)(1)(C) (ordinarily an appeal must be filed not later than 180 days after entry of judgment)"; *Javahery*, 2017 WL 971780 at *5. Here, the court issued a specific performance order. But judgment was never entered and the time for an appeal did not expire. As a result, issue preclusion is not applicable.

Second, because the state court judgment occurred in the context of default judgment, res judicata may only be applied where the record contains express findings on the issue for which preclusion is sought or, absent express findings, where the issue was necessarily decided. *Cantrell*, 329 F.3d at 1123-24. Stay relief and rejection of executory contracts are federal—not state—issues, 11 U.S.C. §§ 362(d), 365(d)(2); *Gruntz*, 202 F.3d at 1083-1084. As a consequence, these issues were not and could not have been considered by the state court. For these reasons, res judicata is not applicable here.

### 2.    *Rooker-Feldman*

"Under the [*Rooker-Feldman*] doctrine, inferior federal courts are precluded from reversing or modifying a state court judgment on the merits where the issues decided in the state court are 'inextricably intertwined' with the federal issue before the court." *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carrut LLP (In re Pavelich*), 229 B.R. 777, 782 (9th Cir. BAP 1999); *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292-293 (2005); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983).  State court losers may not challenge that judgment in a lower federal court. *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994).

*Rooker-Feldman* has four elements:

> [1] the federal court plaintiff must have lost in state court; [2] the plaintiff must complain of injuries caused by the state court judgment; [3] the plaintiff must be asking the district court to review and reject that judgment; and [4] the state court judgment must have been rendered before the district court proceedings commenced (i.e., Rooker-Feldman has no application to federal court suits proceeding in parallel with ongoing state court litigation).

Virginia A. Phillips and Karen L. Stevenson, *California Practice Guide: Federal Civil Procedure Before Trial*, Subject Matter Jurisdiction § 2:4946 (Rutter Group 2021).

Two exceptions to the *Rooker-Feldman* doctrine exist: writs of habeas corpus, *See Plyler v. Moore*, 129 F.3d 728, 732 (4th Cir. 1997); *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993); *Blake v. Papadakos*, 953 F.2d 68, 71 n. 2 (3d Cir. 1992); and core proceedings in bankruptcy cases.  *Gruntz*, 202 F.3d at 1083-1084 (bankruptcy courts have exclusive jurisdiction over core matters); *In re Dunbar*, 245 F.3d 1058, 1061-1064 (9th Cir. 2001); *In re McGhan*, 288 F.3d 1172, 1181-

1182 (9th Cir. 2002); March, Ahart & Shapiro, *California Practice Guile: Bankruptcy*, Governing Law, Jurisdiction and Venue § 1:275 (Rutter Group 2020).

Even if the court construed the debtor's arguments as a request to review the state court's order for specific performance, it would fall within the bankruptcy core matter exception to the *Rooker-Feldman* doctrine. The scope of the stay and the decision to modify, or not to modify it, are core and fall within the exclusive jurisdiction of this court. 28 U.S.C. §§ 157(b)(2)(A), (G), 1334(b); *Gruntz*, 202 F.3d at 1083-1084. Likewise, the assumption or reject of executory leases fall within this court's exclusive jurisdiction. 28 U.S.C. § 157(b)(2)(A)(O); *Alexander*, 670 F.2d at 887-888; *In re Turbowind, Inc.*, 42 B.R. 579, 583 (Bankr. S.D. Cal. 1984). For these reasons, the *Rooker-Feldman* doctrine is not applicable here.

**C.  The Confirmed Plan Binds the Watsons**

As a rule, a confirmed plan binds the debtors and their creditors. "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). "After confirmation, creditors ordinarily cannot assert any interest other than as provided in the plan." March, Ahart & Shapiro, *California Practice Guile: Bankruptcy*, Governing Law, Chapter 13 Cases § 13:1090 (Rutter Group 2020), citing *In re Evans*, 30 B.R. 530, 531-532 (9th Cir BAP 1983).

But creditors without notice of the Chapter 13 case are not bound by the terms of a confirmed plan. *In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993); *Aboody v. U.S. (In re Aboody),* 223 B.R. 36, 40 (1st

Cir. BAP 1998). In most instances, creditors receive notice of a Chapter 13 case when the Clerk of the Court serves the Notice of Chapter 13 Bankruptcy Case. 11 U.S.C. S§ 342(a), 521(1) (debtor must schedule the names and addresses of all creditors); Fed. R. Bank. P. 2002(a)(1), (b), (f); Official Form 309. The Clerk of the Court serves that notice on the list of creditors provided by the debtor.

> *In a voluntary case, the debtor shall file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H as prescribed by the Official Forms.* If the debtor is a corporation, other than a governmental unit, the debtor shall file with the petition a corporate ownership statement containing the information described in Rule 7007.1. The debtor shall file a supplemental statement promptly upon any change in circumstances that renders the corporate ownership statement inaccurate.

Fed. R. Bankr. P. 1007(a)(1) (emphasis added).

But notice of the Chapter 13 case served only on the creditor's attorney is sufficient if there is "a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor. *Vicenty v. Sandoval (In re San Miguel Sandoval)*, 327 B.R. 493, 508 (1st Cir. BAP 2005); *In re Schicke*, 290 B.R. 792, 802-803 (10th Cir. BAP 2003).

Here, the Watsons were omitted from the list of creditors filed by the debtor. Verification of Master Address List, January 20, 2021, ECF No. 2. But Steven Dean of the Dean Law Firm, Inc., who represented the Watsons in their dispute with the Confers, was included on the Verification of Master Address List and did received timely notice of the Chapter 13 case. This is precisely the nexus contemplated by *Sandoval* and by *Schicke*. The Watsons had notice of the Confers' chapter 13 bankruptcy and are bound by the terms of the confirmed plan.

Here, the plan rejected all executory contracts.  The Confers'
plan provided:

> Debtor assumes the executory contracts and unexpired listed
> below.  Debtor shall pay directly to the other party to the
> executory contract or unexpired lease, before and after
> confirmation of this plan and whether or not a proof of
> claim is filed, all post-petition monthly payments required
> by the lease or contract.  Unless a different treatment is
> required by 11 U.S.C. § 365(d)(1) and is set out in section
> 7, the Nonstandard Provisions pre-petition arrears shall be
> paid in full.  Trustee shall pay the monthly dividend
> specified in the table below on account of those arrears.
>
> Any executory contract or unexpired lease not listed…below
> is rejected.
>
> Name of Other Party to Executory Contract/Unexpired Lease
> [debtors inserted the word] '-None-.'"

Plan §§ 4.01-4.02, January 25, 2021, ECF No. 12; *see also* Order
Confirming Plan, April 16, 2021, ECF No. 27.  That the Confers did not
identify the Watsons' interest as an executory contract does not
affect that result.

The Confers' schedules and plan signal treatment of the Watsons'
claim as an unsecured debt and rejection of the executory contract.
The Watsons had specific and timely notice of the case, the deadlines,
and their treatment under the plan through their counsel Steven Dean.
As a result, at least absent revocation of the confirmation order, 11
U.S.C. § 1330, conversion, 11 U.S.C. § 348(c), *Harris v. Viegelahn*,
575 U.S. 510 (2015), or dismissal, 11 U.S.C. § 349, the plan binds the
Watsons, and the Residential Purchase Agreement has been properly
rejected and is of no force or effect.

### D.    Stay Relief

#### 1.    As to the estate

As to the estate, the stay lifts when the property is no longer
property of the estate.  11 U.S.C. § 362(c)(1).  Unless the plan or

22

order confirming the plan provides otherwise, confirmation of a Chapter 13 plan revests property in the debtor. 11 U.S.C. § 1306(b), 1327(b); *California Franchise Tax Board v. Jones (In re Jones)*, 657 F.3d 921, 927-930 (9th Cir. 2011).

Here, the plan revested property in the debtor upon confirmation. Plan § 6.01, January 25, 2021, ECF No. 12. As a matter of law, the stay lifted as to property of the estate upon plan confirmation. Order, April 16, 2021, ECF No. 27. As to the estate, the issue is moot.

### 2.　As to the debtors and the debtors' property

As to the debtors and their property, including 295 San Joaquin Drive, Red Bluff, California, the stay remains in effect. 11 U.S.C. § 362(c)(2) (stay remains until the case is closed or dismissed or a discharge is granted).

Relief may be granted for cause or because there is no equity in the property and the property it is not necessary for an effective reorganization. 11 U.S.C. § 362(d). Cause does not exist. 11 U.S.C. § 362(d)(1). The Confers have effectively rejected their executory contract with the Watsons and have elected to treat them as unsecured creditors. As a consequence, the existence of inchoate specific performance litigation in state court does not constitute cause for stay relief.

Moreover, the Confers have equity in 295 San Joaquin. Equity means the fair market value of the property less the amount due on secured claims. *In re Mellor*, 734 F.2d 1396, 1400, fn. 2 (9th Cir. 1984); *Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984). The property is valued at $255,000. Schedule A/B, February 1, 2021, ECF No. 13; see also Decl. Charlotte Confer p. 2, May 4, 2021, ECF No. 39

(valuing property $280,0000). The first trust deed holder, New Rez, LLC is owed $49,688. Proof of Claim 6-1. The second trust deed holder is owed $46,036. Proof of Claim 3-1. The Confers' equity is $159,276. They have exempted $300,000. Equity exits. This court will not grant stay relief under § 362(d)(2).

As a result, as to the debtors and their property, the motion will be denied.

**VI.   CONCLUSION**

As to the estate, the motion will be denied as moot; as to the debtors and their property, including 295 San Joaquin Drive, Red Bluff, California, the motion will be denied.

To be clear: Harlan Confer, Charlotte Confer and all of their property, e.g., 295 San Joaquin Drive, Red Bluff, California, remain under the wings of this court and continue to be protected by the stay. 11 U.S.C. § 362(a)(1), (a)(5), (a)(6). Any further prosecution of *Watson v. Confer, No. 20CI000087 (Tehama County Superior Court June 8, 2020), or any* action that arose out of the events described therein, whether against Harlan Confer and/or Charlotte Confer personally or to divest them of title, e.g., specific performance, will result in void orders and judgments and will subject all persons participating in that endeavor to an action for damages and/or contempt proceedings before this court.

Assuming that the confirmation order is not revoked, the case is neither dismissed nor converted, and that that Harlan Confer and Charlotte Confer receive their discharge, any debt (including specific performance of the Residential Purchase Agreement)[7] will be forever

---

[7] Excepting those debts determined non-dischargeable in *Watson v. Confer*, No. 21-2024 (Bankr. E. D. Cal. 2021).

1 | unenforceable.  11 U.S.C. § 524(a).

2 | 　　　The court will issue an order from chambers.

3 | **Dated:** June 08, 2021

4 |

5 | Fredrick E. Clement
6 | United States Bankruptcy Judge

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| | |
|---|---|
| **Attorney for the Debtor**(s) | **Barry Spitzer**<br>980 9th Street, Ste 380<br>Sacramento, CA  95814 |
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA  95814 |
| **Nancy Lee**<br>2763 Camino Del Rio S.<br>San Diego, CA  92108 | **Harlan Confer**<br>295 San Joaquin Drive<br>Red Bluff, CA  96080 |
| **Charlotte Confer**<br>295 San Joaquin Drive<br>Red Bluff, CA  96080 | **Dean Law Firm Inc.**<br>PO Box 994134<br>Redding, CA  96099-4134 |